CENTER FOR DISABILITY ACCESS
Mark Potter, Esq., SBN 166317
Krista Hemming, Esq., SBN 304213
Aaina Duggal, Esq., SBN 333681
100 Pine St., Ste 1250
San Francisco, CA 94111
(858) 375-7385; (888) 422-5191 fax
Email: aainad@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Chris Langer, | Case No. 3:22-cv-02050-RBM-DDL |
| Plaintiff, | **Plaintiff's Response in Opposition to Defendant's Motion to Dismiss** |
| v. | Date:     February 6, 2023 |
| Roya Nikzad Phd Allergy & Acupuncture, a Professional Corporation, | Time:     TBA |
| | Place:    Courtroom 5B |
| Defendant. | **Honorable Judge Ruth Bermudez Montenegro** |

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................... 2

TABLE OF AUTHORITIES............................................................. 3

MEMORANDUM OF POINTS AND AUTHORITIES........................ 5

I.      Introduction .............................................................................5

II.     The Defendant's Motion to Dismiss is filed without compliance with the Meet and Confer Requirement. ....................................................5

III.    The complaint is sufficiently pled. ...........................................6

IV.     Defendant's failure to provide closed captioning is a violation of the ADA and Unruh Act. ..................................................................... 13

  A.   The website is a place of public accommodation and independently covered by the Americans with Disabilities Act .................................... 13

  B.   There is a nexus between the website and the physical location, which is a place of public accommodation as defined under the ADA.............**Error! Bookmark not defined.**

  C.   The ADA applies to all services of a place of public accommodation. ......... 17

  D.   Intentional Discrimination is not required for Unruh violations premised exclusively on a violation of the ADA .................................... 21

V.      Conclusion ................................................... 24

Opposition to Motion to Dismiss                    22CV02050 RBM-DDL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*
603 F.3d 666 (9th Cir. 2010) ............................................................... 7

*Boemio v. Love's Restaurant*, 954 F.Supp. 204 (1997).......................... 22

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011).................. 7

*Gorecki v. Hobby Lobby Stores, Inc.*, 17-CV-1131, 2017 WL 2957736, at *4 (C.D. Cal. June 15, 2017). ........................................................ 14

*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1149 ............. 22

*Helen L. v. DiDario*, 46 F.3d 325, 335 (3rd Cir. 1995)........................ 22

*Hurd v. Ramona Land Co.* 2003 WL 23281593, 4 (N.D.Cal. 2003) .............. 23

*Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004)......................................................... 23

*Moeller v. Taco Bell Corp.* 816 F.Supp.2d 831 (N.D. Cal. 2011) ............... 7

*National Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006).......................................................... 19

*Pickern v. Best Western Timber Cove Lodge Marina Resort*, 194 F.Supp.2d 1128 (E.D.Cal. 2002) ......................................................... 23

*Presta v. Peninsula Corridor Joint Powers Board*, 16 F.Supp.2d 1134 (N.D. CA 1998).......................................................... 22

*Reed v. CVS Pharmacy, Inc.*, 17-CV-3877, 2017 WL 4457508, at *3 (C.D. Cal. Oct. 3, 2017).......................................................... 13

*Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000).......................................................... 13

**Statutes**

42 U.S.C. § 12101(b)(1)..................................................... 14

42 U.S.C. § 12182(a) ...................................................... 14

Opposition to Motion to Dismiss                    22CV02050 RBM-DDL

42 U.S.C. § 12183(a)(2) ............................................................. 7

42 U.S.C. §§ 12183(a)(2) ............................................................ 7

Cal. Civ. 51(f) ......................................................................... 22

Rule 8(a) ........................................................................... 6, 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  Introduction

Plaintiff's Complaint ought to withstand the defendant's motion to dismiss for the following reasons: First, Defendant's website is a place of public accommodation. Second, there is a clear nexus between Defendant's website and the physical location at which Defendant conducts business, and third, intentional discrimination is not required for Unruh violations premised exclusively on a violation of the ADA. Plaintiff's pleading states facts sufficient to constitute a cause of action and Plaintiff respectfully requests this court to deny the Defendant's motion to dismiss.

### II.  The Defendant's Motion to Dismiss is filed without compliance with this Court's Meet and Confer Requirement.

This Court's standing order and Civil Chamber Rules require counsel to meet and confer at least seven days prior to filing a motion like the one at issue.

*"III. Motion Practice*

*A. Conference of Counsel Prior to Filing Noticed Motions. Any party contemplating the filing of any noticed motion before this Court must first contact opposing counsel to discuss thoroughly—preferably in person—the substance of the contemplated motion and any potential resolution. The conference must take place at least seven (7) days prior to the filing of the motion. If the parties are unable to reach a resolution that eliminates the need to file the anticipated motion, counsel for the moving party must include in the*

Opposition to Motion to Dismiss                    22CV02050 RBM-DDL

*notice of motion a statement to the following effect: "This motion is made following the conference of counsel that took place on [date]."*

*The only exceptions to this meet-and-confer requirement are: (1) in cases where the plaintiff is appearing pro se and is not an attorney; (2) for applications for temporary restraining orders or preliminary injunctions; and (3) motions and cross-motions for summary judgment. Ex parte applications which have separate requirements below, and joint motions are exempt from this rule as they are not noticed motions."*

Defendant's notice of motion does not contain any statement regarding the parties' attempts to meet and confer about the issues in the motion. There was no attempt by the defendant to schedule such a conference, and the defendant's motion should be denied on this basis alone.

### III.   The complaint is sufficiently pled.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and give "the defendant fair notice of what the . . .  claim is and grounds upon which it rests" in compliance with Rule 8(a) of the Federal Rules of Civil Procedure. In order to determine whether a pleading contains the necessary allegations, a party must understand what constitutes a viable claim under the cause of action pled.

Here, the Plaintiff's claims are based on Title III of the ADA. To succeed on a Title III ADA architectural barrier claim, "a plaintiff must show that: (1) he is disabled . . . (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the

Opposition to Motion to Dismiss                        22CV02050 RBM-DDL

plaintiff was denied public accommodations" because of his disability.[1] "The third element—whether plaintiffs were denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards."[2] This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities"[3] and, where there are no alterations, "a failure to remove architectural barriers...in existing facilities...where such removal is readily achievable."[4]

Thus, the following is a simplified statement of the elements necessary for Mr. Langer to allege under this section:

1. Mr. Langer must be disabled.
2. Defendant's facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA.
3. Defendants must be responsible parties, i.e., owners, operators, lessors or lessees;
4. Defendant's facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendants failed to remove;
5. Mr. Langer must have actually encountered this unlawful barrier;
6. The barrier must continue to impact Mr. Langer because either (1) he will return and face it again or (2) He is being deterred from returning because of his knowledge of the barrier.

As demonstrated by the table below, Mr. Langer has made all the necessary factual and legal allegations necessary to state a claim.

---

[1] *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

[2] *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) *citing*, *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011)

[3] 42 U.S.C. § 12183(a)(2)

[4] 42 U.S.C. § 12182(b)(2)(A)(iv)

Opposition to Motion to Dismiss                    22CV02050 RBM-DDL

| Element | Fact Alleged |
|---|---|
| 1. Disability | "Plaintiff is a disabled individual and a member of a protected class of persons under the Americans with Disabilities Act. Plaintiff is hard of hearing and needs closed captioning to consume audio content such as movies, videos or tutorials. Plaintiff is a California resident."<br><br>• (Complaint, ¶ 1). |
| 2. Place of Public Accommodation | "Roya Nikzad PHD Allergy & Acupuncture offers privileges, advantages, accommodations, facilities, goods, or services ("Benefits") to the public out place of public accommodation in California as defined by the ADA. These benefits are generally available for public use.<br><br>The Website is one of the Benefits offered to customers and is a nexus between Roya   Nikzad PHD   Allergy   & Acupuncture,   a Professional Corporation customer and the physical place of public accommodation.  The information on the website alone is a covered Benefit, allowing patrons to learn about goods and services as well as the business itself without leaving their home."<br><br>• (Complaint, ¶ 16 & 17). |
| 3. Responsible Parties | "Defendant   Roya   Nikzad   PHD   Allergy   & Acupuncture,   a   Professional Corporation ("Roya Nikzad PHD Allergy & Acupuncture and/or Clinic) owned or operated Roya Nikzad PHD Allergy & Acupuncture located in the County of San Diego, in August 2022.<br><br>Defendant   Roya   Nikzad   PHD   Allergy   & Acupuncture owns or operates Roya Nikzad PHD Allergy & Acupuncture located in the County of San |

Opposition to Motion to Dismiss                    22CV02050 RBM-DDL

| | |
|---|---|
| | Diego County currently. |
| | Defendant Roya Nikzad PHD Allergy & Acupuncture owned or operated Roya Nikzad PHD Allergy & Acupuncture website, with a root domain of: https://createwellnesslajolla.com/, and all related domains, sub-domains and/or content contained within it, ("Website") in August 2022. |
| | Defendant Roya Nikzad PHD Allergy & Acupuncture owns or operates the Website currently". |
| | • (Complaint, ¶ 2-5). |
| 4. Plaintiff's Encounter with Barriers. | "Plaintiff visited the Website with intent to partake in the Benefits of the place of public accommodation offered through the Website while confirming the accessibility of the Benefits offered by the Website and Roya Nikzad PHD Allergy & Acupuncture. |
| | Plaintiff visited the Website on or about August 2022 to look for information about the Roya Nikzad PHD Allergy & Acupuncture and Knee stem cell therapy clinic in San Diego and the scope of its services and work. |
| | When Plaintiff attempted to view video content on the Website, he discovered that the videos lacked closed captioning, which made him unable to fully understand and consume the contents of the videos. |
| | Plaintiff was denied full and equal access to the audio components of the video: "About Us"; "Brain Fog and insomnia NEAT treatment - Stephanie P.". As a result of this inaccessibility, he was unable to understand the content was deterred from further use of the Website. |

Opposition to Motion to Dismiss                    22CV02050 RBM-DDL

| | |
|---|---|
| | Plaintiff asserts that any customer facing aspect of the Website, including videos were placed there intentionally and for a rational purpose. Those videos provide value independently as a separate benefit and failure to provide closed captioning provides an inherently disparate and unequal experience to disabled customers.<br><br>Currently, the Defendant either fail to provide an accessible website or Defendant have failed to maintain in working and useable conditions those website features required to provide ready access to persons with disabilities.<br><br>Despite multiple attempts to access the Website using Plaintiff's electronic device, Plaintiff has been denied the full use and enjoyment of the facilities, goods and services offered by the Defendants as a result of the accessibility barriers on the website.<br><br>Plaintiff personally encountered accessibility barriers and has actual knowledge of them."<br><br>• (Complaint, ¶ 18, 20-26) |
| 5. The Barriers are Readily Achievable to Remove | "The Department of Justice has recognized that the ways "websites are designed and set up can create unnecessary barriers that make it difficult or impossible for people with disability to use websites." United States Department of Justice, <u>Guidance of Web Accessibility and the ADA</u> August 18, 2022). This non-compliance "keep people with disabilities from accessing information and programs that businesses...make available to the public online." *Id*.<br><br>The DOJ has stated that these "barriers can be |

Opposition to Motion to Dismiss                    22CV02050 RBM-DDL

prevented or removed so that websites are accessible to people with disabilities." *Id*. Further, the DOJ asserts that all businesses open to the public must ensure that all of the ADA's equal access requirements apply to business websites. *Id*.

Compliance with W3C Web Content Accessibility Guidelines ("WCAG") 2.0 AA standards is a viable remedy for these deficiencies and a standard that has been recommended by the United States Department of Justice and adopted by California courts for website accessibility.

The industry standards for website design are well-known and established. The Website was intentionally designed, and based on information and belief, it is the Defendants' policy and practice to deny Plaintiff access to the Website, and as a result, denies the goods and services that are otherwise available to patrons of Roya Nikzad PHD Allergy & Acupuncture.

Closed captioning can be provided at little cost, sometimes free or mere dollars per minute of video content.

Closed captioning is supported by numerous third-party hosting companies, including the one chosen by Defendants, and can be provided at little cost, sometimes free or mere dollars per minute of video content.

Closed captioning is a readily expected accommodation for audio information contained within video content and is required by industry guidelines. Further, captioning can be provided at little cost, sometimes free or mere dollars per minute of video content.

Opposition to Motion to Dismiss                    22CV02050 RBM-DDL

| | | |
|---|---|---|
| | | Given the prevalence of websites that have implemented these standards and created accessible websites, it is readily achievable to construct an accessible website without undue burden on Roya Nikzad PHD Allergy & Acupuncture or a fundamental alteration of the purpose of the Website." |
| | | • (Complaint, ¶12-13, 32-37) |
| | 6. Plaintiff is deterred from returning. | "Plaintiff has been deterred from returning to the Website or further interest in the benefits of the physical place of public accommodation as a result of these prior experiences.<br><br>By failing to provide an accessible website, the Defendants denied Plaintiff full and equal access to the benefits offered to their customers.<br><br>If the website had been constructed equally accessible to all individuals, Plaintiff would have been able to navigate the website and find information on the Roya Nikzad PHD Allergy & Acupuncture and its services.<br><br>Plaintiff is a tester in this litigation and seeks future compliance with all federal and state accessibility laws. Plaintiff will return to the Website to avail himself of its benefits and to determine compliance with the disability access laws once it is represented to him that Roya Nikzad PHD Allergy & Acupuncture and Website are accessible.<br><br>Plaintiff is currently deterred from doing so because of Plaintiff's knowledge of the existing barriers and uncertainty about the existence of yet other barriers on the Website. If the barriers are not removed, Plaintiff will face unlawful and discriminatory barriers again." |

Opposition to Motion to Dismiss                    22CV02050 RBM-DDL

| | |
|---|---|
| | • (Complaint ¶ 27-31) |

Each of the required factual allegations has been made.

## IV. Defendant's failure to provide closed captioning is a violation of the ADA and Unruh Act.

### A. The website is a place of public accommodation and independently covered by the Americans with Disabilities Act

Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Pursuant to Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodation of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

The Ninth Circuit has explained that the phrase "place of public accommodation" refers to a "physical place." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000). However, "[t]he requirement that a place of public accommodation refer to a physical place...does not preclude a plaintiff from challenging a business' online offerings." *Reed v. CVS Pharmacy, Inc.*, 17-CV-3877, 2017 WL 4457508, at *3 (C.D. Cal. Oct. 3, 2017). "So long as there is a 'nexus' - that is, 'some connection between the good or service complained of and an

actual physical place' - a plaintiff may challenge the digital offerings of an otherwise physical business." *Id*. (citing *Weyer*, 198 F.3d at 1114). In other words, the ADA "applies to the services **of** a place of public accommodation, not service **in** a place of public accommodation. To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute." *Id*. (emphasis in original) (citing *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006)). This construction was also adopted by the Ninth Circuit in *Robles v. Domino's Pizza, LLC* 913 F.3d 898.

The Department of Justice has "repeatedly affirmed that Title III [of the ADA] applies to websites that meet the definition of public accommodation." *Gorecki v. Hobby Lobby Stores, Inc.*, 17-CV-1131, 2017 WL 2957736, at *4 (C.D. Cal. June 15, 2017).

Courts have distinguished between websites that purely have an online presence, such as Facebook or Twitter, and businesses such as the one that is the subject of this matter.

> While the Court acknowledges that a website in and of itself is not a place of public accommodation under the ADA, the Ninth Circuit has distinguished between a stand-alone website, and a website that has a nexus to a physical location. For example, Defendant cites to Young v. Facebook, Inc., 790 F. Supp. 2d 1110, 1115, (N.D. Cal. 2011) for its argument that Defendant's website is not subject to the ADA. However, in Young, the court held that "Facebook operates only in cyberspace, and thus is not a 'place of public accommodation' as construed by the Ninth Circuit." Id. at 1114. The court noted that "[w]hile Facebook's headquarters is obviously a physical space, it is not a place where the online services to which Young claims she was denied access are offered to the public." Id. This is

distinguishable from the situation here, where Plaintiffs have demonstrated a nexus between the alleged discrimination on Defendant's website and Defendant's physical place of public accommodation. Under this framework, the Court finds that Title III of the ADA applies to Defendant's website.

### B. There is a nexus between the website and the physical location, which is a place of public accommodation as defined under the ADA.

The defense claims that Plaintiff did not allege a nexus between the videos on the Defendant's website and the services provided at the Defendant's place of business. However, this argument is flawed for the Plaintiff has alleged just that. "The Website is one of the Benefits offered to customers and is a nexus between   Roya  Nikzad PHD Allergy        & Acupuncture,         a Professional Corporation customer and the physical place of public accommodation.  The information on the website alone is a covered Benefit, allowing patrons to learn about goods and services as well as the business itself without leaving their home.[5] Plaintiff further alleges: "Roya Nikzad PHD Allergy & Acupuncture offers privileges, advantages accommodations, facilities, goods, or services ("Benefits") to the public out place of public accommodation in California as defined by the ADA. These benefits are generally available for public use.[6] Plaintiff alleges that he Plaintiff visited the Website with intent to partake in the Benefits of the place of public accommodation offered through the Website while confirming the accessibility of the Benefits offered by the Website and Roya Nikzad PHD Allergy & Acupuncture.[7] Finally, Plaintiff pleads that when he attempted to view video content on the Website, he discovered that the videos lacked closed captioning, which made him

---

[5] Complaint, Dkt. 1, p. 17
[6] Complaint, Dkt 1, p. 16
[7] Complaint, Dkt 1, p. 18

Opposition to Motion to Dismiss                          22CV02050 RBM-DDL

unable to fully understand and consume the contents of the videos.[8] As a result of this inaccessibility, Plaintiff was unable to understand the content and was deterred from further use of the Website.[9]

In *Robles v. Domino's Pizza, LLC* 913 F.3d 898 (9th Cir. 2019), the Court rejected the argument that websites are not governed by the ADA, and held the ADA "applies to the services *of* a place of public accommodation, not services *in* a place of public accommodation. To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute."*Id*. at 905. The Court also held that the inaccessibility of Domino's website impedes the access of goods and *services* provided by the chain. *Id*. at 905.

> The nexus between the website and the service Defendant provides is critical. Here, the website appears to be an advertisement for its services and it allows persons to gather information about the services provided. The website steers business to the Defendant. Domino's website and app facilitate access to the goods and services of a place of public accommodation—Domino's physical restaurants. They are two of the primary (and heavily advertised) means of ordering Domino's products to be picked up at or delivered from Domino's restaurants. We agree with the district court in this case—and the many other district courts that have confronted this issue in similar contexts—that the ADA applies to Domino's website and app, which connect customers to the goods and services of Domino's physical restaurants.

*Id*. at 905-906.

---

[8] Complaint, Dkt 1, p. 21
[9] Complaint, Dkt 1, p. 22-27

Opposition to Motion to Dismiss                    22CV02050 RBM-DDL

The result should be no different here. The privileges, advantages, accommodations, facilities, goods, or services ("Benefits") that Defendant offers are performed at physical location that is owned and operated by Defendant. The main way to access Defendant's offers is via its website. The website of the Defendant allows patrons to learn about goods and services as well as the business itself without leaving their home. Plaintiff clearly pleads a nexus to a physical location.

Moreover, the defense fundamentally misunderstands the nexus requirement, in general. The "nexus" requirement looks at whether the website at issue has a relationship to a physical place of public accommodation. The requirement stems from the Ninth Circuit's decision in *Weyer v. Twentieth Century Fox Film Corp.* (2000) 198 F.3d 1104. There, the court held that the Defendant in that case—"an administrator of an employer-provided disability insurance fringe benefit"— was not a "place of public accommodation" *Id*. at 1119. More recently, and along the same lines, the appellate court in *Martinez v.Cot'n. Wash, Inc.* (2022) 81 Cal.App.5th 1026, held that a purely digital retail website with no connection to a physical place is not covered under the ADA as a place of public accommodation. Here, however, that is not the case. Again, the defense operates a physical location, and as outlined above, provides services that brings it within the definition of a "place of public accommodation" under the ADA. The question posed by the "nexus" test is whether the website at issue has a connection to a physical place of public accommodation. Here, it does.

C.     **The ADA applies to all services of a place of public accommodation.**

In *Robles*, the court was faced with a situation where a blind person sued Domino's because its website was not capable of being read by screen reader software ("SRS"). The Ninth Circuit states that the ADA "applies to the <u>services</u> of a place of public accommodation, not <u>services in</u> a place of public accommodation. To limit the ADA to discrimination in the provision of services occurring on the premises of public accommodation would contradict the plain language of the statute." *Id*. at 905 (emphasis added).

The ADA simply requires that a business provide auxiliary aids to ensure effective communication with the disabled.

"Discrimination" under the ADA encompasses the denial of the opportunity, by the disabled, to participate in programs or services, and providing the disabled with separate, but unequal, goods or services. *See* 42 U.S.C. § 12182(b)(1)(A)(i-iii). To ensure that the disabled have full and equal enjoyment of the goods and services of places of public accommodation, the ADA requires "reasonable modification" of "policies, practices, and procedures," the provision of auxiliary aids to ensure effective communication with the disabled, and the removal of architectural and communications barriers. 42 U.S.C. § 12182(b)(2)(A)(ii-iv). The ADA thus departs from certain anti-discrimination statutes in requiring that places of public accommodation take affirmative steps to accommodate the disabled

In other words, because the Website was offered as a service, benefit, and privilege, the failure to provide closed captioning in its videos violated the ADA and Unruh as to Mr. Langer, who is hearing impaired. Just like how the mobile application was a service offered by Dominos,

18

1   Defendant's website, and the videos contained on the website are, in itself,
2   one of the services offered by Defendant.

3       In *National Federation of the Blind v. Target Corp.* (N.D. Cal. 2006)
4   452 F.Supp.2d 946, 954-55, the court held: "[I]t is clear that the purpose
5   of the statute is broader than mere physical access... Indeed, the statute
6   expressly states that the denial of equal 'participation' or the provision of
7   'separate benefit[s]' are actionable under Title III." The district court also
8   addressed what it called the "false dichotomy" that the defense urges
9   here, holding that "many of the benefits and privileges of the website are
10  services of the Target stores... The case law does not support the
11  defendant's attempt to draw a false dichotomy between those services
12  which impede physical access to a public accommodation and those
13  merely offered by the facility." *Id*. at 954-55. See also, *Erasmus v. Charles
14  W. Perry, M.D.., Inc. (*E.D. Cal. 2021) 2021 WL 4429462 ("testimonial
15  videos may often prove valuable to an individual considering whether to
16  solicit a business's services by providing information about prior
17  customers' experiences and the benefits and detriments the viewer is
18  likely to experience if she obtains those services herself."). Therefore, Mr.
19  Langer was denied access to Defendant's services, because the video and
20  the website was a distinct service offered by Defendant.

21      Moreover, captioning on website videos is also necessary to prevent
22  exclusion of hearing-impaired individuals in the context of the ADA's
23  requirement to provide the appropriate auxiliary aids for effective
24  communication:

25      Here, Plaintiff, who suffers from Delayed Endolymphatic Hydrops
26  (DEH) which has caused permanent partial hearing loss, alleges he visited
27  the website to look for information about the Defendant but was unable to

28

Opposition to Motion to Dismiss                    22CV02050 RBM-DDL

understand them because the videos lacked closed captioning.[10] Defendant's Website, therefore, failed to provide the "auxiliary aids and services ... necessary to ensure effective communication" with Plaintiff, a disabled individual. See 28 C.ER. §36.303(c)(1); see also id. at § 36.303(b)(1) defining "auxiliary aids and services" to include "closed captioning" and other accommodations designed to render "aurally delivered information available to individuals who are deaf or hard of hearing."

*Erasmus v. Andrea Tse M.D., Inc.* (E.D. Cal. June 16, 2022) No. 2:21-CV-01149-TLN-KJN, 2022 WL 2181710, at *6-8; see also, *Erasmus v. Charles W. Perry, M.D.,Inc.* (E.D. Cal. Sept. 27, 2021) No. 2:21-CV-00915-WBS-KJN, 2021 WL 4429462, at*4-6 ("Plaintiff, who is completely deaf, alleges she was a prospective customer who sought to view defendant's testimonial videos to gain more information about its clinic and its scope of services but was unable to understand them because they lacked closed captioning... Plaintiff has therefore, adequately stated a claim under Title III of the ADA.").

Accordingly, Plaintiff has alleged adequate facts to show the videos on Defendant's Website provide a non-deaf person a benefit in assessing whether to obtain its services that is unavailable to a disabled person, thereby impeding "full and equal" access to and "enjoyment of" its services for people that are hard of hearing, and "treat[ing them] differently than other individuals because of the absence of auxiliary aids

---

[10] Complaint, Dkt 1, paragraphs 20-22

Opposition to Motion to Dismiss                    22CV02050 RBM-DDL

and services." 42 U.S.C. 12182(b)(2)(A)(ii). Therefore, Plaintiff has sufficiently stated a claim under Title III of the ADA.

**D.   Intentional Discrimination is not required for Unruh violations premised exclusively on a violation of the ADA**

The defense further argues that Plaintiff's complaint should be dismissed because it failed to establish intentional discrimination. The California Supreme Court ruled in the case *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1149 that disparate impact cases involving gender discrimination requires a showing of intentional conduct. *Harris*, 52 Cal.3d at 1148.  But the version of the Unruh Civil Rights Act that existed when the *Harris* court issued its ruling is not the same version that exists today.

In 1992, the California Legislature amended the Unruh Civil Rights Act to read that:

 (f) A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section.

Cal. Civ. Code § 51(f).

The ADA does not require intentional conduct: "The scope of the Act covers not only intentional discrimination, but also the discriminatory effects of benign neglect, apathy, and indifference." *Helen L. v. DiDario*, 46 F.3d 325, 335 (3rd Cir. 1995).  This previously raised the question, "*if the ADA does not require intentional conduct and the Unruh Civil Rights Act*

*states that any violation of the ADA is a violation of Unruh . . . do you need to allege or prove intentional conduct to succeed an Unruh claim predicated upon an ADA violation?*"

Every single court to publish on this issue has ruled that there is no need to allege or prove intentional conduct when the Unruh cause of action is based on an ADA violation.  In *Presta v. Peninsula Corridor Joint Powers Board*, 16 F.Supp.2d 1134 (N.D. CA 1998), the plaintiff alleged the same type of discrimination as the plaintiff in the present case has alleged: failing to honor disability access rights under the ADA and the Unruh Civil Rights Act. *Id*. at 1134. The court identified what it believed to be a matter of first impression: "whether a plaintiff bringing a claim of discrimination on the basis of a disability must prove discriminatory intent on the part of a defendant for liability to attach under the Unruh Civil Rights Act." *Id*. The court held that "a plaintiff need <u>not</u> prove that the defendant harbored discriminatory intent." *Id*. (emphasis added).

In *Boemio v. Love's Restaurant*, 954 F.Supp. 204 (1997), the court also addressed the issue and stated: "**<u>The enabling statutes do not require an intentional violation in order for recovery for the disabled individual</u>**." *Id*. (emphasis added). The *Boemio* court cited California law and explained that "The public policy interest in providing physically handicapped persons with equal access to public facilities warrants the enactment of a statute prescribing liability for denial of access without reference to the violators intent."[11]

---

[11] *Id*. at fn. 4; see also, *Hurd v. Ramona Land Co.*  2003 WL 23281593, 4 (N.D.Cal. 2003) ("This Court agrees that the *Harris* case is inapposite and adopts the reasoning in *Presta* in which Judge Henderson ruled that a plaintiff bringing a disability discrimination action under California's Unruh Civil Rights Act need not prove discriminatory intent).

Opposition to Motion to Dismiss                    22CV02050 RBM-DDL

"Intentional discrimination is no longer a prerequisite to liability under these statutes. Therefore, the fact that plaintiff cannot prove intentional discrimination is of no consequence. Because plaintiff survives summary judgment on her ADA claim for the reasons set forth above, she also survives summary judgment with respect to her claims under the Unruh Act and the California Disabled Persons Act." *Pickern v. Best Western Timber Cove Lodge Marina Resort*, 194 F.Supp.2d 1128 (E.D.Cal. 2002)(superseded in part on other grounds).

Finally, the Ninth Circuit published on the subject. "We find that, regardless of whether *Harris* may continue to have relevance to other Unruh Act suits, no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation. This result is mandated by the plain meaning of the Unruh Act's language, which states that a violation of the ADA is, per se, a violation of the Unruh Act... Therefore, we affirm the district court's conclusion that, insofar as the appellants violated the ADA, a showing of intentional discrimination was not required in order to award damages under the Unruh Act." *Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004).

Thus, Plaintiff can establish a claim for a violation of the ADA, and therefore, a claim for a violation of Unruh.  A showing of intentional discrimination is not required since Plaintiff's Unruh claim is premised exclusively on the ADA violation.

//
//

Opposition to Motion to Dismiss                    22CV02050 RBM-DDL

1

## V.   Conclusion

2

3        Since Defendant's website has an undeniable nexus with its physical

4   facility, and is itself a place of public accommodation, Plaintiff respectfully

5   requests this Court to deny the Motion to Dismiss, if, however, the Court

6   grants the motion, Plaintiff requests that he be given leave to amend.

7

8

9   Dated: January 18, 2023          CENTER FOR DISABILITY ACCESS

10

11                                   By: */s/ Aaina Duggal*
                                     Aaina Duggal
12                                   Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Opposition to Motion to Dismiss                22CV02050 RBM-DDL